## JOHN WATRE v. GREAT NORTHERN RAILWAY COMPANY.[1]

October 9, 1914.

Nos. 18,733—(237).

**Finding sustained by evidence.**
    1. Jury's finding that the flooding of plaintiff's land was due to defendant's negligence, sustained.

**Evidence excluded.**
    2. Trial court *held* not to have abused its discretion in excluding evidence of the amount of rainfall at distant points.

1 Reported in 149 N. W. 18.

Note.—Liability of railroad company for conducting surface water through its embankments and onto the property of an adjoining owner, see note in 12 L.R.A.(N.S.) 680.

Right to flow of surface water generally, see note in 21 L.R.A. 593.

**Damages — evidence.**

3. Evidence *held* to afford a sufficient basis for a reasonable approximation of the portion of the damage attributable to defendant's acts.

**Refusal to instruct jury.**

4. Refusal of instruction upon the necessity of differentiating the loss occasioned by defendant's negligence from that due to other causes, *held* not reversible error.

**Construction of court rule 9.**

5. Under rule 9 of this court, where the sufficiency of the evidence to sustain the verdict is challenged, the portions of the record printed must be in substantial conformity with the settled case and not be in the nature of a bill of exceptions.

Action in the district court for Grant county to recover $1,000 for damage caused by the diversion of surface water from its natural watershed. The answer alleged that in building its railway and in making excavations therefor defendant exercised all the care that was reasonable under the circumstances and that any embankments, grades, ditches or excavations that were made were only such as were necessary and, if any surface water escaped from its right of way upon the land of plaintiff, the same was caused not through any negligence on its part, but by reason of defendant's lawful acts in the employment of its own property for the purposes for which it was intended. The facts are stated in the opinion. The case was tried before Flaherty, J., and a jury which returned a verdict for $550 in favor of plaintiff. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*M. L. Countryman* and *A. L. Janes,* for appellant.

*E. J. Scofield,* for respondent.

PHILIP E. BROWN, J.

Action to recover damages for the destruction of growing crops in the years 1907 and 1908, claimed to have been caused by defendant's unlawful diversion of and flooding by surface waters. Plaintiff had a verdict and defendant appealed from an order denying its alternative motion.

Plaintiff, in the years stated, owned the southwest quarter of the southwest quarter of section 3, in North Ottawa township, Grant county. His crops growing thereon were destroyed by surface water in June, 1907 and 1908. His land was quite level, sloping to the west, and that west of it was also level. Defendant's railway line ran about east a few rods north of plaintiff's north line, and about two miles east of his premises intersected a gravel ridge forming a watershed which, previously to the construction of defendant's line and the excavations shortly to be mentioned, caused waters falling upon a large area to the east thereof to flow to the south, clear of plaintiff's lands. Defendant had two sand pits in the west side of the ridge, one immediately north and the other just south of its track. The north one was 50 or 60 acres in extent, and the south one about 80 acres. They were from three to five feet deep. The south pit had not been used for a number of years, but the other was being worked in May and June, 1907 and 1908. Defendant had excavated the gravel in the pits below the bottom of a ravine or coulee immediately east of the ridge, through which surface waters had theretofore been accustomed to run south. After the excavation these waters, in times of very heavy rainfall, ran over the eastern rim of the south pit and collected therein, escaping through a cut made by defendant in the west rim some two miles east of the south line of plaintiff's land. In the north pit defendant had constructed an opening through the sand ridge into the coulee, for the purpose of taking water therefrom into the pits for use in its engines, and had also placed obstructions in the coulee. This pit was drained by a 12x24 inch culvert laid under a sidetrack which branched from the main track near the west edge of the pit and extended to the east side thereof, which was several feet higher than the west. This culvert was the only outlet from the pit and emptied into defendant's borrow pit on the north side of its track. The two pits were not connected by any opening. The land north and south of plaintiff's and easterly to the ridge is flat, with natural drainage to the south and west. From the sand pits westerly it falls rapidly 18.3 feet in the first mile, 14.7 feet in the second, and in the third to plaintiff's west line, 4.3 feet. There were borrow pit ditches on both sides of defendant's track, with culverts at

the highway crossings, claimed by plaintiff to be inadequate, and three bridges between the sand pits and plaintiff's west line, one being directly north of plaintiff's land, which was bounded on the south by a graded section line highway, a like highway being on the north line of the same section. Both of these highways extended from west of plaintiff's premises easterly to the sand pits, their ditches being so constructed as to carry the water west to an artificial ditch. North and south of defendant's track were graded section line roads between sections 1 and 2, 2 and 3, and 3 and 4, and with ditches on each side draining from north to south.

The months of May and June in both years mentioned were very wet, with heavy rains in June, and, just previous to the flooding of plaintiff's land in 1908, there was a very heavy but not unprecedented rainfall, the lands in the localities mentioned being thereafter covered with water. On plaintiff's land, however, the water stood for two or three weeks. After these rains water from the north sand pit ran through the culvert mentioned and over the side track and from the cut in the south pit, reaching plaintiff's lands through the railway and highway ditches.

The evidence was amply sufficient to establish the facts as recited, so far as they may be regarded as disputed, and summarizing its effect, in connection with the opinion evidence, we hold that it warranted the jury in finding: (a) That defendant, for purposes of its own, diverted and collected water from the natural course of drainage and, by cutting through the divide, cast it upon plaintiff's premises where otherwise it would not have gone; (b) that, while the rains in 1907 and 1908 were heavy, they were not so unusual and extraordinary in that locality as to exempt defendant from liability as for *vis major* or such as defendant was not bound to anticipate and guard against; (c) that the continued standing of water on plaintiff's land was attributable to defendant's acts.

1. Defendant contends that it had the right to drain its south pit through the artificial cut in its west rim, and also the right to take water from the coulee into its north pit for use in its engines, and to drain this pit into its borrow pits, and that it fully performed all duties, by constructing ditches along its right of way sufficient to

·carry off all ordinary volumes of surface water coming from the ·coulee into the sand pits or otherwise collecting therein.

If it be admitted that defendant had the legal right to collect waters in its pits and to drain them to the west, yet, under numerous ·decisions of this court, a duty was imposed to use all reasonable means to avoid injury therefrom to the property of others, which duty is ·governed by the same principles as that of individuals. Howard v. Illinois Central R. Co. 114 Minn. 189, 130 N. W. 946. Whether it took such precautions in obstructing the flow of water in the coulee and in maintaining its ditches, were questions for the jury, whose findings thereon, necessarily included in the verdict, are sustained ·by the evidence.

2. Error is assigned as to the court's refusal to permit defendant to show the amount of rainfall at Morris, 38 miles from plaintiff's land, during May and June, 1908. It was admitted, however, that rains sometimes occurred at Morris when none would fall upon plaintiff's land, and even without this the remoteness of the evidence is apparent. Evidence must afford a basis for relief over and above mere conjecture and be more than remotely relevant. No general test has been established for determining whether it is too slight, conjectural or remote. These questions must be left largely to the judgment of the trial court. Thayer, Evidence, 516. It is doubtful if the exclusion of the evidence was prejudicial, but that aside we find no reversible error in the court's action.

3. It appeared that plaintiff must have suffered some loss directly from rains and from waters for which defendant was not responsible, but the principal damage was evidently occasioned by water standing on his land for several weeks. The court carefully limited the recovery to damages caused by defendant's negligent acts, thus establishing the law of the case as to plaintiff. Defendant, however, insists that the evidence warrants no rational deduction differentiating these losses, and requested an instruction to the effect that, if the jury were unable to determine the damages severally, they should ·award nominal damages only, error being assigned because it was not given. In the nature of things damages under such circumstances as here disclosed cannot be ascertained with mathematical

certainty, nor is it necessary that they should be in order to entitle plaintiff to a recovery. A liberal discretion is vested in the jury to determine, from all the facts shown, what part was caused by defendant's acts. Of course a jury cannot act without evidence, and there must be some basis upon which to found an award; but mere difficulty in getting at the amount of damages is no reason for denying them altogether. The principle is well illustrated in cases where owners of dogs are held liable for the losses respectively occasioned by their own animals, and for none other, though the dogs acted together, slight circumstances being deemed sufficient to afford a basis for apportionment of the aggregate damage. Another illustration is in case of trespass by cattle of different owners. The rule is well stated in Sellick v. Hall, 47 Conn. 260, where the total damage was caused by an overflow attributable partly to defendant's wrongful acts and partly to city drainage.

"It may be very difficult," said the court at page 274, "for a jury to determine just how much damage the defendant is liable for and how much should be left for the city to answer for; but this is no more difficult of ascertainment than many questions which juries are called upon to decide. They must use their best judgment, and make their result, if not an absolutely accurate one, an approximation to accuracy. And this is the best that human tribunals can do in many cases."

See also Sedgwick, Damages (9th ed.) § 36a, p. 40.

In the case before us no insuperable difficulty confronted the jury in arriving at a reasonably accurate approximation of plaintiff's loss caused by defendant's acts alone. Nor was it error to refuse defendant's requested instruction. Its substance was fairly covered by the charge given. Moreover, it was inaccurate in ignoring the rule of approximation, and, standing alone, gave the jury no workable rule.

4. The record in this case does not comply with rule 9 of this court (139 N. W. viii.). It is practically a bill of exceptions; and where, as here, the sufficiency of the evidence to sustain the verdict is challenged, it is a material and unwarrantable deviation from the rule, adding greatly to the labor of the court. The portion of the evidence printed must be in substantial conformity with the settled

case. The insufficiency of the record in the present case, being the first instance of the kind since the adoption of the rule, has been overlooked; but our action in this regard must not be taken as a precedent.

Order affirmed.