## GEORGE F. MILLER v. JULIUS J. REITER AND OTHERS.[1]

March 16, 1923.

No. 22,989.

**Appeal bond enforceable.**

1. A bond on appeal conditioned to pay the damages sustained by reason thereof is enforceable according to its terms as a common law bond though such bond may not have been necessary to secure a stay, a question not decided, following Carlson v. American Fidelity Co. 149 Minn. 114, and other cases.

**Recovery of loss of profits.**

2. Loss of profits from the interruption of an established business may be recovered. The law does not refuse damages merely because of the difficulty of ascertaining their amount; but their amount must be fairly proved and not left to guess or conjecture.

**New trial granted on amount of damages.**

3. The evidence does not sustain a verdict so large as that returned and a new trial is directed upon the question of the amount of damages.

Action in the district court for Olmsted county to recover $2,500 on a bond. The case was tried before Callaghan, J., who when plaintiff rested denied defendants' motion to dismiss and at the close of the testimony denied their motion for a directed verdict, and a jury which returned a verdict in favor of plaintiff. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Reversed.

*Fraser & Fraser, Burt W. Eaton, Gray & Thompson* and *F. A. Pike,* for appellants.

*James A. Carley* and *Irving L. Eckholdt,* for respondent.

DIBELL, J.

Action on a bond. There was a verdict for the plaintiff. The defendants appeal from the order denying their alternative motion for judgment notwithstanding or a new trial.

[1]Reported in 192 N. W. 740.

1. The bond was executed upon the appeal of the defendant Reiter from a judgment directing the issuance of a peremptory writ of mandamus commanding him to sign the license of the plaintiff to sell intoxicating liquors granted by the common council of Rochester. See State v. Reiter, 140 Minn. 491, 168 N. W. 714. The defendant first executed a cost bond pursuant to G. S. 1913, § 8002, and later executed the bond in suit, with the other defendants as sureties, conditioned to "pay the costs of said appeal, and the damages sustained by the respondent in consequence thereof, if the said judgment or any part thereof shall be affirmed, or the appeal dismissed, and to abide and satisfy the judgment or order which the appellate court may give therein." The bond substantially follows G. S. 1913, § 8003, which provides for a supersedeas, on the giving of such bond, on an appeal from an order. The bond uses the word judgment where the statute uses the word order. The section following provides for a supersedeas on an appeal from a judgment and is differently worded. It is the contention of the defendant that under section 8012, which provides that in cases for which provision is not made in sections 8004-8007, section 8004 referring to a money judgment, section 8005 to a judgment for the assignment or delivery of documents or property, section 8006 to a judgment directing the execution of a conveyance or other instrument, and section 8007 to a judgment for the sale or delivery of possession of real property, the bond provided by section 8002 stays proceedings in the court below upon the judgment, with exceptions not here important; and that the bond in suit was unnecessary to effect a stay. However, the bond was executed and delivered. It is good as a common law bond.

In Carlson v. American Fidelity Co. 149 Minn. 114, 182 N. W. 985, it was held that a surety on a bond in certiorari, conditioned as a supersedeas bond under section 8004 on appeal from a money judgment, though such a bond need not have been given as a condition to the issuance of the writ, was bound by the obligation which it assumed. The cases are there collected and need not be reviewed. The rule there applied controls here. We need not determine the correctness of the defendants' contention as to the effect of the statutes cited. It might seem a bit anomalous, though, to hold that

if a defendant appeals from the order directing the issuance of the writ he is required to give a bond, if he has a stay, conditioned as required by section 8003, which in effect was held in State v. Webber, 31 Minn. 211, 17 N. W. 339, but that if he appeals from the judgment he may have a stay upon the execution of a cost bond under section 8002.

To avoid future misunderstanding of our present decision it may be noted that the defendant is not protected from liability on his bond upon the ground that in his conduct under review he was discharging a duty of his office involving discretion. His situation is not that of the defendant in Roerig v. Houghton, 144 Minn. 231, 175 N. W. 542, who was exercising governmental discretion. The council had directed the issuance of the license and the defendant Reiter had no discretion. It was his duty to sign.

2. Upon the execution of the bond there was a stay and the place of business of the plaintiff was closed from April 13, 1918, to August 2, 1918. He sustained a loss. It is the contention of the plaintiff that his profits were too uncertain for judicial ascertainment. He was making profits before the interruption of his business; he made profits afterwards. He had conducted his business in the same place for some years. It is the settled doctrine of this court that losses of profits suffered through the interruption of an established business may be recovered. Goebel v. Hough, 26 Minn. 252, 2 N. W. 847; Mississippi & R. R. Boom Co. v. Prince, 34 Minn. 71, 24 N. W. 344; Emerson v. Pacific Coast & Norway Packing Co. 96 Minn. 1, 104 N. W. 573. Loss being shown, an award of damages will not be denied merely because of the difficulty of ascertaining them, though of course the amount of the damages must be established by fair proof and not left to conjecture. There must be proof of a loss measurable by a fixed sum of money. The evidence before us justifies an award of damages in some amount.

3. The verdict was for $2,000. The interruption of the business of the plaintiff was for a few days over 3½ months. He offered evidence as to his net profits for January, February and March preceding the time of the closing, and for August, September and October following. For January he claims they were $246.86; for February $234.03; and for March $439.31. For August, when his

business was resumed, they were $668.87; for September $634.10; and for October $1,019.25. For the three months prior to the closing of the business the average was a trifle more than $300. For the three months succeeding the average was $775. His books of account had been burned. He had a memorandum book which he claimed showed his daily receipts. He figured the profits which should come from such receipts and thus estimated his so called net profits, first deducting the overhead and expenses. The net profit per month claimed for the six months was substantially $540 and the jury awarded damages substantially on that basis. There was no evidence of the cost of the stock. There were no inventories. The plaintiff was unable to state how much capital was invested. He estimated it loosely at $5,000 or $6,000 or $7,000. His personal earning power was not great. When his business was interrupted he worked as a plumber at a small wage, and when his business was resumed he continued work as a plumber, working evenings in the saloon.

The amount of damages, reached in the manner indicated, is so unsatisfactory that a verdict of so large a sum cannot be sustained. It is for the plaintiff to prove his loss. If he is unable to prove the full amount of it, the misfortune is his. The verdict must be based on actual facts proved and not upon conjecture.

In view of a new trial it is proper to say that evidence was competent tending to show the conditions in Rochester, during the material period in 1918, reasonably affecting the plaintiff's business. The court might have been more liberal in its rulings on evidence of the character mentioned. On the other hand, much of the testimony offered by the defendants, to the exclusion of which exception is taken, was clearly aside from the issue of damages, which, as correctly charged by the trial court, was the only subject of inquiry. It was calculated to influence the jury by suggesting a false issue. The liability of the defendants to respond in damages is determined. The trial court held them liable. We sustain it. There is no room for further controversy. Upon the going down of the remittitur the new trial will be confined to the amount of damages sustained.

Order reversed.