## VILLAGE OF ELBOW LAKE v. OTTER TAIL POWER COMPANY.

160 N. W. (2d) 571.

July 19, 1968—No. 40,709.

44

*I. L. Swanson,* for appellant.

*Field, Arvesen, Donoho & Lundeen,* for respondent.

OTIS, JUSTICE.

This is an action brought by a municipality against a public utility to recover on a bond or undertaking furnished by the utility during prior litigation wherein the utility unsuccessfully sought to prevent the municipality from constructing a power plant. The municipality appeals from a judgment denying recovery. The issues are, first, whether the undertaking entitled the municipality to recover attorney's fees incurred in litigating the prior action; second, whether the evidence compels an award of damages for loss of profits; and, third, whether the evidence sustains a finding that the municipality suffered no damage with respect to the interest rate it ultimately paid for the bonds sold to finance the construction of the power plant.

In 1962, the village of Elbow Lake took steps to construct a municipal power plant and distribution system by entering contracts with Fairbanks, Morse & Company and Northolt Electric Company. Bids for revenue bonds to finance construction were advertised and were to be received on October 30, 1962. However, on October 29, 1962, Otter Tail Power Company brought an action to enjoin the construction of the plant and the sale of bonds for that purpose. The village then demanded a bond as authorized by Minn. St. 562.02, stating in its motion:

"* * * [S]uch bond to be conditioned for payment to the defendant Village of Elbow Lake, a municipal corporation, of any loss or damage which may be caused to such Village or its taxpayers *by any delay*

caused by the pendency of this action, if the plaintiff should not prevail therein, all pursuant to Chapter 562, M.S.A." (Italics supplied.)

The motion was granted in December 1962. An undertaking was thereupon furnished by Otter Tail.[1]

No temporary injunction was sought or granted, but it is conceded that the litigation suspended any possibility of securing bids on bonds from October 30, 1962, until April 6, 1965, when the action and the appeal were determined adversely to Otter Tail and new bids were received. Otter Tail Power Co. v. MacKichan, 270 Minn. 262, 133 N. W. (2d) 511.

■ The village argues that the action had the same effect as if a temporary injunction had been issued. It therefore asserts that the undertaking should be treated as one, authorized under Minn. St. 585.04, "* * * conditioned for the payment to the party enjoined of such damages as he shall sustain by reason of the writ, if the court finally decides that the party was not entitled thereto." In support of its contention the village cites Pelkey v. National Surety Co. 143 Minn. 176, 173 N. W. 435; Nielsen v. City of Albert Lea, 87 Minn. 285, 91 N. W. 1113; and Lamb v. Shaw, 43 Minn. 507, 45 N. W. 1134.

The trial court held that the authority cited by the village had no application since the undertaking on which this suit was brought was conditioned, not for payment of "such damages as he shall sustain by reason of the writ," but for any loss or damage resulting from delay caused by the

---

[1] The actual undertaking which was furnished made no mention of "delay" but was couched in the following language: "* * * Otter Tail Power Company, a corporation, does hereby Undertake and agree that it will pay to the Village of Elbow Lake any loss or damage which may be caused to the said Village, or the taxpayers of said Village, which may result *from the pendency of this action,* if the Plaintiffs shall not prevail herein." (Italics supplied.)

Minn. St. 562.02 provides in part: "* * * Such bond shall be conditioned for payment to the public body of any loss or damage which may be caused to the public body or taxpayers by such delay, to the extent of the penal sum of such bond, if such party, or parties, shall not prevail therein."

Since the actual undertaking was furnished pursuant to the statute but was not responsive to the motion, the court and the parties below treated the undertaking as one whose terms included "delay" as set forth in the motion of the village.

pendency of the action. We agree with the court's reasoning. The attorney's fees resulted from litigating the action and perfecting the appeal, and not from delay. Section 562.02 was adopted in 1957 for the apparent purpose of discouraging vexatious lawsuits by irresponsible litigants. It is clearly more narrow in scope than § 585.04. Whatever other elements of damage are provable as a result of delays experienced in litigation of this kind, attorney's fees for trying the main action is not one of them.

■  The village recognizes the general rule that proof of loss of profits in a new business is too speculative to be the basis for recovery. However, it is claimed that the proposed power plant would simply take over an established operation and that under such circumstances the case is governed by our decisions in Goebel v. Hough, 26 Minn. 252, 256, 2 N. W. 847, 849, and Miller v. Reiter, 155 Minn. 110, 112, 192 N. W. 740, 741. In support of its position, the village argues that it was to charge the same rate to the same customers for the same amount of energy over a determined period of months, and its income could thus be determined with precision. The village offered to prove by a qualified engineer the cost of fuel, interest, depreciation, administration and overhead, labor, maintenance, office, legal and accounting services, bad debts, and other anticipated expenses of doing business. The offer was rejected. In its memorandum the court pointed out that this is a new plant, newly constructed, with no experience on which to base projected profits. The court said:

"*  *  * The efficiency of management, the cost of fuel, and other costs for a small operation, the amount of depreciation and bookkeeping methods for determining profits are such variable items and so nebulous that any attempt to predicate profits thereon would be sheer guesswork."

We concur in this conclusion. The expense in operating a public utility with a new generating and distribution plant depends among other things on the experience and skill of management and the cost of labor, imponderables which no expert can assess with accuracy. The court was therefore correct in sustaining objection to the offer.

■  Finally, the village concedes that the question of whether or not it was obliged to pay a higher rate of interest in 1965 than in 1962 was one to be resolved by the factfinder. However, it asserts that the court erred

in not permitting cross-examination of defendant's experts with respect to the adverse effect the prior litigation had on interest rates and on potential bidders. Otter Tail, on the other hand, argues that the action, which terminated in a final decision favorable to the village could not have adversely affected the bidding since it resolved against Otter Tail every issue which it raised in challenging the legality of the bonds. This argument is persuasive. There was ample evidence that the interest rates were as low in 1965 as in 1962. It is unlikely the opinion which was to be elicited would have had any significant impact on the court's final conclusions in any event.

Since both Fairbanks Morse and Northolt Electric honored their original contracts, no additional construction costs were incurred or claimed.

The judgment is therefore affirmed.