**SAN ANTONIO CONSERVATION SO-CIETY, INC., Petitioner,**

**v.**

**CITY OF SAN ANTONIO et al., Respondents.**

**No. B–1928.**

Supreme Court of Texas.

May 27, 1970.

Rehearing Denied July 8, 1970.

Harvey L. Hardy, San Antonio, for petitioner.

Howard C. Walker, City Atty., Crawford B. Reeder, Asst. City Atty., San Antonio, for respondents.

POPE, Justice.

This appeal concerns the constitutionality of Sections 20 and 22 of Article 7150, Vernon's Tex.Civ.St. The City of San Antonio and the San Antonio Independent School District, hereafter called City, sued the San Antonio Conservation Society, Inc., to recover ad valorem taxes assessed against property known as the Navarro House, which the Society owns. Since the City sought to recover taxes for the years 1964 through 1967 and Section 22 was not effective at that time, we are concerned only with Section 20. The trial court rendered judgment that the Society's property was exempt from ad valorem taxes because it was a purely public charity. The court of civil appeals was of the view that Section 20, in exempting historical buildings and sites, is unconstitutional and violates the requirement of Section 2, Article VIII of the Texas Constitution which limits tax exemptions to institutions of purely public charity. 448 S.W.2d 528. We hold that the Navarro House meets the statutory and constitutional tests for exemption.

The parties stipulated that the Society is a non-profit organization which is chartered for the purpose of preserving historical buildings and sites, the Society is operated in fact as such, and the Navarro House is a genuine historical site and is exclusively used by the Society for that purpose. The Society has not leased nor otherwise used the Navarro House with a view to profit. The Society bought the house to avoid its demolition and then restored it at a total cost of about $91,000.00, and the house is used as an historical museum for the benefit of all the public. Jose

Navarro was a native Texas hero before, during, and after the Texas Revolution and served Texas as one of its great public figures for many years.[1]

Section 2 of Article VIII of the Texas Constitution, omitting the exemption provision which are not here relevant, provides:

"All occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax; but the legislature may, by general laws, exempt from taxation * * * institutions of purely public charity; and all laws exempting property from taxation other than the property above mentioned shall be null and void." Vernon's Texas Constitution.

The Texas Legislature, pursuant to the constitutional limitation, promptly enacted laws which exempted the properties named by the constitution, including "institutions of purely public charity." It was not until 1905, however, that the Legislature undertook to define that phrase more fully. Acts 29th Leg., ch. 127, pp. 314–315, presently Sec. 7, Art. 7150. Since that time, subsequent Legislatures have amended the definition to afford exemptions to personal property belonging to institutions of public charity, and more recently to include non-profit institutions organized for the purpose of preventing cruelty to animals. The Legislature has not only enlarged, from time to time, the definition of the term by amendments to section 7; the Legislature has also added additional sections to Article 7150. Section 20 was enacted in 1955. Acts, 1955, 54th Leg., ch. 271, p.

---

[1]. Navarro was born in San Antonio, fought against Spain in the Battle of Medina River, served as a representative in the States of Coahuila and Texas, aided three Texas colonization efforts, represented Coahuila and Texas in the Mexican Congress, served in the Convention of 1836 at Washington-on-the-Brazos, and signed the Declaration of Independence, served on the committee of twenty-one to draft the Constitution of the Republic, was elected to the Third Congress of the Republic, was captured while on the Texan Santa Fe Expedition and imprisoned in Mexico until his escape three years later, was the only native Mexican delegate to the Convention of 1845 and voted for annexation and thereafter served in the First and Second Legislatures. (Handbook of Texas, 262–263)

752. Sections 7 and 20, Article 7150, omitting irrelevant portions, provide:

Art. 7150. "The following property shall be exempt from taxation, to-wit:

"7. Public Charities. All buildings and personal property belonging to institutions of purely public charity, together with the lands belonging to and occupied by such institutions * * * not leased or otherwise used with a view to profit, unless such rents and profits and all moneys and credits are appropriated by such institutions solely to sustain such institutions and for the benefit of the sick and disabled members and their families and the burial of the same, or for the maintenance of persons when unable to provide for themselves, whether such persons are members of such institutions or not. An institution of purely public charity under this article is one which dispenses its aid to its members and others in sickness or distress, or at death, without regard to poverty or riches of the recipient, also when funds, property and assets of such institutions are placed and bound by its law to relieve, aid and administer in any way to the relief of its members when in want, sickness and distress, and provide homes for its helpless and dependent members and to educate and maintain the orphans of its deceased members or other persons; * * *."

"20. " * * * Hereafter all buildings, together with the lands belonging to and occupied by such organizations known as The American Legion, American Veterans of World War II, Veterans of Foreign Wars of the United States, Disabled American Veterans, Jewish War Veterans and Catholic War Veterans, or any non-profit organization chartered or incorporated under the Texas Statutes for the purpose of preserving historical buildings, sites and landmarks, not leased or otherwise used with a view to profit, shall be exempt from taxation in this State. * * *."

We must first decide whether Section 7 provides the exclusive definition and meaning to the term "institution of purely public charity." This is the City's contention. If Section 7 is not the exclusive definition, we must decide whether an institution which owns an historical building and site may be a purely public charity within the constitutional meaning of the term. If Section 7 provides the exclusive definition of the term, the Navarro House is not exempt under certain rules announced by this court in City of Houston v. Scottish Rite Benev. Ass'n, 111 Tex. 191, 230 S.W. 978 (1921), and Santa Rosa Infirmary v. City of San Antonio, 259 S.W. 926 (Tex. Comm.App., 1924). Those cases were recently reviewed and discussed in Hilltop Village, Inc. v. Kerrville Ind. School District, 426 S.W.2d 943 (Tex.Sup.1968).

Section 7 concerns and defines charity in the sense of almsgiving and the three cases cited above state rules which an institution must meet to qualify for that kind of charity. Those cases arose by reason of claims that the institutions in question provided relief to the needy, the sick, and the distressed; and in doing so relieved the government of burdens it would otherwise be charged with solving.

In River Oaks Garden Club v. City of Houston, 370 S.W.2d 851 (Tex.Sup.1963), we again wrote on the subject of institutions which claimed an exemption under Art. 7150. There, as in the present case, the right to exemption was asserted under sections other than Section 7. The Garden Club claimed an exemption under Section 14 which concerned the fine arts and Section 20 which included historical sites. We denied the claimed exemption, but we did not do so because Sections 14 and 20 authorized charities which were different from the almsgiving type defined in Section 7 or because Section 7 was the exclusive basis for the claim that an institution was one of purely public charity. We held that the benefits of the Garden Club were no more than benefits to its society. We said, " * * * its main activity is to

educate and enlighten its members, and such other persons as care to attend its meetings or read its book * * *." In support of our decision, we quoted and grounded our decision upon this rule which we had also announced in Scottish Rite:

> " 'Charity need not be universal to be public. It is public when it affects all the people of a community or state, by assuming, to a material extent, that which otherwise might become the obligation or duty of the community or the state.' "

■ The Conservation Society relies upon Section 20 which the Legislature enacted in 1955, Acts 1955, 54th Leg., ch. 271, p. 752. It is our opinion that the 1905 Legislature by the enactment of what is now substantially the same as Section 7, did not bind its will upon subsequent legislatures. Cooley, Constitutional Law, ch. IV, § 1, (4th ed.) ; 1 Sutherland Statutory Construction, § 2003 (3rd ed.1943). The Legislature by its later enactment of Section 20 intended to add to or change the existing law and that section will be given effect provided it otherwise meets the constitutional prohibitions concerning exemptions. Independent Life Ins. Co. of America v. Work, 124 Tex. 281, 77 S.W.2d 1036 (1934) ; American Surety Co. v. Axtell Co., 120 Tex. 166, 36 S.W.2d 715 (1931) ; Texas Bank & Trust Co. v. Austin, 115 Tex. 201, 280 S.W. 161 (1926) ; 53 Tex.Jur.2d, Statutes, § 187.

■■ We must now determine whether the preservation of the Navarro House affords a purely public charity within the meaning of the constitutional use of that term. We must measure the benefits to the whole public against the rule announced in Scottish Rite and restated in River Oaks Garden Club. That rule is: "It is public when it affects all the people of a community or state by assuming, to a material extent, that which otherwise might become the obligation or duty of the community or the state." The City concedes that the whole public receives the benefits

of the Navarro House. Our remaining question is whether the Society by preserving the house is assuming to a material extent that which otherwise might become the obligation or duty of the community or state. We think it does.

The Constitution of 1876 authorized the exemption of public charities from taxation, and that same constitution also expressed the obligation of the government to preserve the evidences of Texas' historical heritage. Texas Const. Art. XVI, § 38 (Commissioner of Insurance, Statistics and History) ; Texas Const. Art. XVI, § 39 (Appropriations for Historical Memorials) ; Texas Const. Art. XVI, § 45 (Historical Records, Rolls, Documents). Texas has recognized this obligation frequently and from an early date. The first session of the Legislature following the adoption of the Constitution of 1876 created the Department of Insurance, Statistics and History. 8 Gammel's Laws, pp. 1055, 1061. In 1883 the 18th Legislature appropriated money for the purchase of the Alamo lot and building. 9 Gammel's Laws, p. 435. Two years later the State, while retaining title, delivered the property to the City of San Antonio for preservation. 9 Gammel's Laws, p. 745. The 18th Legislature also appropriated $1,500.00 for the "Purchase and erection of [a] monument over the veterans who fell at Goliad" and a similar sum to purchase the "ground where the graves of the fallen heroes of the Battle of San Jacinto are now situated." 9 Gammel's Laws, p. 435. In 1897 the 25th Legislature established a park on the San Jacinto Battlefield and authorized the condemnation of additional lands. Acts 1897, ch. 106, p. 144.

In 1909 the Legislature established the Library and Historical Commission. Arts. 5434–5446, V.T.C.S. In 1957 the Legislature created the Texas State Historical Survey Committee. Art. 6145, V.T.C.S. Section 7 of the Act authorizes the committee to furnish leadership for organizations, institutions and individuals with a primary interest in the preservation of the

historical heritage of Texas and Section 8 of the Act says that the committee shall furnish consultant services for the preservation and restoration of historical houses, sites and landmarks.

Article 678m, V.T.C.S., authorizes the State Building Commission to acquire land or enter into contracts for the permanent preservation of memorials upon public or private land of heroes of the Texas War for Independence and landmarks of statewide historical significance associated with historic events or personalities. Article 6081s, V.T.C.S., authorizes the Parks and Wildlife Department to acquire by purchase or gift, among other things, structures or sites "significantly associated with the lives of outstanding historic persons, or with an important event that will represent some great idea or ideal." Article 6145-9, V.T.C.S., known as the Antiquities Code, was enacted after this suit arose, but it clarified much of what the State had been doing for many years even before the Code. The reach of governmental interest in historic sites is contained in Section 2 of the Code.[2]

The early Texas interest in history and the continuing expression of that interest by later legislation has resulted in the public's preservation of historical sites and battlefields which represent almost every era of Texas history. Palo Duro Canyon State Scenic Park and the Meridian State Park preserve the prehistoric and Indian eras. Indianola State Historic Park is the site of Spanish and French settlements. Mission San Francisco de los Tejas State Historical Park marks the place of the first Spanish missions established in East Texas in 1690. San Jose Mission State and National Historic Site preserves the mission established in 1720 during Spain's great colonial power.

The old Galveston Quarter was preserved to implement the "Texas constitutional provisions by preserving and perpetuating as a memorial to the history of Texas one of the m st historically significant areas of Texas * * *." Art. 6145-4, V.T.C.S.

Stephen F. Austin State Historic Park is the site of San Felipe where the conventions of 1832 and 1833 and the consultation of 1835 were held. Velasco State Recreation Park marks the battlefield of the 1832 Battle of Velasco. Washington-on-the-Brazos State Historic Park is the site of Texas' Declaration of Independence, and the first capitol of Texas. Lipantitlan State Historic Site is the place where Texas fought a two-day battle against the Mexican forces. Momument Hill State Park is the place where martyred Texans were entombed after falling victims of the death lottery on the Mier Expedition. The Battleship Texas is preserved to commemorate the Second World War. Art. 6145-2.

The homes of other historic persons are preserved. The Lyndon B. Johnson State Historic Park, the Eisenhower Birthplace State Historic Site, the Governor Hogg Shrine State Historic Site and the Varner-Hogg Plantation State Historic Park are parts of the State Park Service.

We have not exhausted the examples of governmental interest in preserving historical buildings and sites. We conclude

2. Sec. 2. "It is hereby declared to be the public policy and in the public interest of the State of Texas to locate, protect, and preserve all sites, objects, buildings, pretwentieth century shipwrecks, and locations of historical, archeological, educational, or scientific interest, including but not limited to prehistoric and historical American Indian or aboriginal campsites, dwellings, and habitation sites, archeological sites of every character, treasure imbedded in the earth, sunken or abandoned ships and wrecks of the sea or any part or the contents thereof, maps, records, documents, books, artifacts, and implements of culture in any way related to the inhabitants, prehistory, history, natural history, government, or culture in, on or under any of the lands in the State of Texas, including the tidelands, submerged lands, and the bed of the sea within the jurisdiction of the State of Texas."

that the Navarro House satisfies the rule stated in Scottish Rite and River Oaks Garden Club in that the Society has assumed, to a material extent, that which otherwise might become the obligation or duty of the community or the state. See, Tappan Washington Memorial Corp. v. Margetts, 9 N.J.Super. 212, 75 A.2d 823 (1950); Portsmouth Historical Society v. City of Portsmouth, 89 N.H. 283, 197 A. 712 (1938).

The judgment of the court of civil appeals is reversed and that of the trial court is affirmed.