

# THE ATTORNEY GENERAL

# OF TEXAS

## AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

April 15, 1971

Honorable Jules Damiani, Jr.
Criminal District Attorney
405 County Courthouse
Galveston, Texas 77550

Opinion No. M-837

Re: Liability of medical
fraternities at Uni-
versity of Texas Medical
School at Galveston for
ad valorem taxes.

Dear Mr. Damiani:

You request our opinion as to

". . . whether the medical fraternities at
the University of Texas Medical School at Galveston
. . ."

are exempt from ad valorem taxes by reason of either or both of the
following grounds authorized in Article VIII, Section 2 of the Texas Con-
stitution.

(1)    ". . . buildings used exclusively and owned
by persons or associations of persons for
school purposes . . .;"

(2)    ". . . institutions of purely public charity;
. . ."

School buildings are exempted by Section 1 of Article 7150, Ver-
non's Civil Statutes*, which in its relevant portion reads:

"The following property shall be exempt from
taxation, to-wit:

---

*    All references to statutes are to Vernon's Civil Statutes unless
otherwise stated.

-4049-

"1.  Schools and Churches - Public school
houses. . . All public colleges, public
academies, . . . and all such buildings
used exclusively and owned by persons
or associations of persons for school
purposes; . . ."

Also, you cite Section 22 of Article 7150 (Acts 1967, 60th Leg. ,
R. S. , p. 319, ch. 152) which exempts the property of all fraternal organi-
zations, as therein described, when used for certain purposes; this Section
22 reads as follows:

"The property of all fraternal organizations
shall be exempt from taxation for so long as the prop-
erty is owned and used for charitable, benevolent, re-
ligious, and educational purposes, and is not in whole
or in part leased out to others, or otherwise used with
a view to profit.

"The term 'Fraternal Organization' as used in
this Act shall mean, 'A lodge, or lodges, engaged in
charitable, benevolent, religious, and educational work, '

"However, this Act shall not apply to any fra-
ternal organization or lodge which pays to its members,
either directly or indirectly, any type of insurance bene-
fit, be it life, health, accident or death benefit, or any
other type of insurance; neither shall any organization
which shall directly or indirectly participate or engage
in any political activity, either in support of or in op-
position to any candidate seeking any public office, have
or be entitled to benefits as provided under this Act. "

Our opinion is that the evidence submitted by you is not sufficient
to exempt the properties of these medical fraternities under any of the fore-
going constitutional or statutory grounds.

1.

We first consider whether these properties are exempt as school
buildings under either of the above quoted provisions of the Constitution and
of Article 7150, Section 1.

In this connection you request that we reconsider our former Attorney General's Opinion No. M-12 (1967), in view of the holding of our Texas Supreme Court in the case of San Antonio Conservation Society, Inc. v. City of San Antonio, 455 S. W. 2d 743 (Tex. Sup. 1970) and the case of City of Memphis v. Alpha Beta Welfare Ass'n., 126 S. W. 2d 323 (Tenn. Sup. 1939.) The San Antonio case was decided subsequently to our Opinion M-12, and the City of Memphis case was decided prior to our Opinion and was not cited nor referred to in our Opinion.

We quote the entire statement of facts which you submit in support of your claims for exemption:

"It should be noted from the outset that there is not sufficient dormitory space for male medical students attending the University of Texas Medical Branch. While some students live in private residences, the great majority of single male students live at fraternity houses which are normally operated as non-profit corporations and charitable associations adjacent to the campus. The fraternity programs are integrated with the University of Texas Medical Branch and each fraternity maintains a supervised study program and a medical library for students. Such an arrangement gives each medical fraternity access to medical journals, textbooks, and specimens. In addition, each of the fraternities furnish the following educational benefits to the medical students as an assist to the Medical Branch:

"1. Maintenance of a library in each fraternity with access to medical journals, textbooks, and specimens (osteological, CNS, Histological, etc.)

"2. Provisions of textbooks and study aids to most of the members of fraternities in Years I and II. These aids frequently include microscopes.

"3. Lecture sessions with faculty and private physicians in the fraternities. These occur at the rate of about one/month. Not only do

individual fraternities sponsor those
sessions, but the Inter-fraternity Coun-
cil and the Sophomore Class have had
regular 'Fireside Chats' in the frater-
nities featuring visiting dignitaries,
faculty and administration.

"4. Tutorial sessions are frequently held in
the fraternities by course instructors at
student's request. Attempts to review,
clarify and emphasize material are made
during these sessions.

"5. Orientation of new students to medical
school and of each class to its ensuing
years and to new assignments is a con-
stant, ongoing procedure.

"6. Study sessions and review sessions of
students and upperclassmen.

"7. Informal gatherings of students discuss-
ing clinical cases, management, and
philosophy and ethics of medicine occur
continuously.

"8. Provide professional contacts and guid-
ance in the evolving professional behavior.
Social functions form a small part of medi-
cal fraternities activity.

"9. These are not 'typical Greek Letter fratern-
ities' but unique both as fraternities and as
medical fraternities. They play a large part
in the culture, heritage and attractiveness of
UTMB.

"10. Provision of housing and preparation of meals
for single students near the campus is of es-
timable value.

"11. Hospital cafeteria and surrounding facilities could not support the number of people who would depend on them if not for fraternities.

"12. Availability of fraternities to hospital is of great importance when students are on call and must come to the hospital to give medications, evaluate patients, work up new patients or go to surgery.

"13. There is no 'school' organized recreational/social program. All activities stem from organization by the individual fraternities and the Inter-fraternity Council.

"14. Patients being cared for by students are state patients. Without the student's help and availability in many areas, more administrative and nursing personnel would be required.

"15. Fraternities have no reason for existence except to serve the University and its student body. The University depends upon the fraternities to provide essential services and to nurture the professional growth of medical students.

"16. Services provided by the fraternities cost the University nothing. In their absence, considerable expense might have to be incurred to provide these benefits."

Our careful comparison of these facts with those set forth in our prior Opinion M-12 shows no new facts that would warrant holding the properties in question to be exempt. We consider the present facts to be only repetitive of those considered in Opinion M-12, without adding any new reason for holding the properties in question to be exempt. We refrain from considering here again all the reasoning and authorities presented in our former Opinion,

but rather we refer to it as the basis both in fact and in the legal authorities there cited for our holding in this present opinion.   See also Attorney General's Opinion No. M-778 (1971.)

In the City of Memphis case, supra, the court construed a Constitutional exemption of property ". . . held and used for purposes . . . educational . . ." The Texas Constitutional provision exempts property used for "school purposes" and also institutions of "purely public charity ." These provisions are different in wording and cannot be construed to be the same in all situations.   The rule was well stated in the case of Little Theater of Dallas v. City of Dallas, 124 S. W. 2d 863 (Tex. Civ. App. 1939, no writ):

> "Appellant cites a number of decisions from the courts of other states, tending to show that . . . debating clubs, . . . professor's houses, dormitories and music associations were exempt from taxation, but these decisions were based upon and controlled by constitutional and statutory provisions peculiar to the respective states, hence are not controlling as authorities here. "

We note that in the City of Memphis case the only issue presented was whether the real estate of a general welfare corporation was used by it exclusively for "educational purposes, " a constitutional and statutory ground for tax exemption.   The Court noted:

> "The specific purpose for which Alpha Beta Welfare Association was created, as stated in its charter, is the 'promoting and providing for medical and scientific education of young men, and for the purpose of owning property, both real and personal, to be used exclusively in furthering the aforesaid purposes; . . . '

> "The only witnesses who testified on the trial of the case were three physicians introduced by the Association.   Thus the facts of the case are not in controversy. "
> (126 S. W. 2d 324. )

In its concluding paragraph, the Court concluded that under the great weight of authority tax exemptions have not been granted to college Greek letter

fraternities, except under express statutory authority, and further said:

> "In our opinion no blanket rule can be laid down and made applicable to all fraternities. Whether or not the property of a fraternity is exempt from taxation is dependent, as in all other cases, on the use made of the property. Each case must be determined on its own facts . . . " (126 S. W. 2d 326. )

We are in agreement with this reasoning; however, aside from the distinguishing legal and factual aspects noted above from the factual situation presented, the holding was made in the City of Memphis case only after trial and upon undisputed and non-controversial testimony. Likewise, in the San Antonio Conservation Society case, supra, the trial court, upon stipulations of the parties and a non-controversial fact situation, had held, and the Supreme Court affirmed, that the Conservation Society had assumed, to a material extent, that which otherwise might become the obligation or duty of the community or state, the statutory and constitutional test for tax exemption. The Court said:

> "The City concedes that the whole public receives the benefits of the Navarro House. " (455 S. W. 2d 746. )

Under the facts presented, no city, county or state taxing authorities have stipulated or conceded anything. We are presented only with a partial statement of miscellaneous facts concerning educational benefits to the medical students who were fortunate enough to be accepted into the fraternity houses. The amount of charity dispensed, the confinement to public charitable purposes of the fraternity and its perpetual dedication of the property to public charity in the charter, the conditions of admission or rejection to all on a non-discriminatory public charitable basis, are all additional matters which must be considered not shown here. In this connection, the general evidentiary and legal guidelines have been noted in Attorney General Opinion No. C-697 (1966) and in Hilltop Village, Inc. v. Kerrville Independent School Dist. , 426 S. W. 2d 943 (Tex. Sup. 1968), to which you are referred. In view thereof, we are unable to say as a matter of law that the fraternities are entitled to ad valorem tax exemption. We do not say, however, that in a specific case such a fraternity is precluded from the legal possibility of showing its property is owned and used for school purposes or as an institution of purely public charity.

We now consider whether the properties of the fraternities may be comprehended within Article 7150, Section 22 (Acts 1967, 60th Leg., R.S., p. 319, ch. 152) which exempts from taxation property of

"... all fraternal organizations ... for
so long as the property is owned and used for charit-
able, benevolent, religious, and educational purposes,
and is not in whole or in part leased out to others, or
otherwise used with a view to profit." (Emphasis added.)

The Legislature therein defined the term "Fraternal Organization" to mean,

"A lodge, or lodges, engaged in charitable,
benevolent, religious, and educational work."

Assuming without deciding, that the above statute contemplates the exemption of the property of medical fraternities, nevertheless that statute, to be constitutional and in harmony with Section 2, Article VIII of the Consti-tution of Texas, must be construed to provide an exemption for such property only if owned and primarily used as an "actual place of religious worship," or "for school purposes," or as "institutions of purely public charity." Un-less the medical fraternities can bring themselves clearly within one of those enumerated exceptions, they are not exempt. The Legislature is powerless to grant an exemption that does not meet this constitutional concept and test. The City of Waco v. Texas Retired Teacher Residence Corporation, No. B-2179, Feb. 17, 1971, Tex. Sup. Ct.; Attorney General Opinion Nos. M-778 (1971) and M-517 (1969), and authorities therein cited; City of San Antonio v. Young Men's Christian Association, 285 S. W. 844 (Tex. Civ. App. 1926, error ref.) Thus, in the case of fraternal associations granted such a tax exemp-tion by a general statute, it has been held that such a statute was violative of the implied limitations of a constitutional provision authorizing the Legis-lature to exempt property used exclusively for charitable purposes. Supreme Lodge, M.A.F.O. v. Board of Review, 223 Ill. 54, 79 NE 23, (Ill. Sup., 1906.)

In the above case, the Supreme Court of Illinois pertinently observed:

"...Obviously, then, if the fraternal bene-
ficiary societies which are relieved from taxation by
the statute under consideration do not fall within one of
the classes whose property the Constitution provides

may be exempted from taxation by general law,
any act of the Legislature purporting to exempt
their property from taxation is unconstitutional.
The Legislature has no power to exempt from
taxation any property other than that enumerated
in Section 3 of Article 9 of the Constitution. Such
enumeration is an exclusion of all other subjects
of exemption. . ." (at p. 24.)

In view of our conclusion that college fraternities or sororities, including the medical fraternities, are generally held to be not exempt from taxation because they do not exist primarily for charitable or educational and benevolent purposes, we must necessarily likewise conclude that as a general rule the property of such organizations is not exempt under Section 22, Article 7150, when harmonized with Section 2, Article VIII of the Texas Constitution. As observed in Beta Xi Chapter of Beta Theta Pi v. City of New Orleans, 137 So. 204 (La. Ct. of App., 1931) while the practice of a fraternity in performing certain ch aritable work is commendable, tax exemption cannot be shown unless the character of the work undertaken is one of the principal objects of the organization, the doing of such work as relieves the State of some of its burdens, and that the property itself, and not only th e organization, must be devoted to such undertakings. This is the well-settled rule in Texas. Hilltop Village, Inc. v. Kerrville Ind. Sch. Dist., 426 S. W. 2d 943 (Tex. Sup. 1968); River Oaks Garden Club v. City of Houston, 370 S. W. 2d 851 (Tex. Sup. 1963.) The case of San Antonio Conservation Society, Inc. v. City of San Antonio, 455 S. W. 2d 743 (Tex. Sup. 1970) is not controling under the facts we have under consideration.

We are unable to say as a matter of law th at the medical fraternities in question constitute "lodges engaged in charitable, benevolent, religious, and educational work." When harmonized with Article VIII, Section 2, Constitution of Texas, as stated in 51 American Jurisprudence 602, Taxation, Section 627, this determination is ordinarily and most often a question of fact in the light of all the facts and circumstances involved, and further:

". . . Although there are holdings to the contrary,
the prevailing rule seems to be that such (fraternal) asso-
ciations are not institutions of 'purely public charity' within
the meaning of such a phrase in a tax exemption provision.
In this connection, it has been pointed out that the word 'purely'

as thus used is intended to modify the word 'charity' and not the word 'public', so as to require the institution to have a wholly altruistic quality and exclude from it every private or selfish interest or profit or corporate gain. (Parenthesis ours.)

It is held that it is not enough to exempt property from taxation that one of several purposes or results of its use is charity. It is required to be the chief, if not the sole, object. 51 Am. Jur. 605, Taxation, Sec. 631; Benevolent & Protective Order of Elks v. Houston, 44 S. W. 2d 488 (Tex. Civ. App. 1931, error ref.), citing R. C. L.

It is therefore our conclusion that the facts and circumstances submitted are insufficient to present a case for tax exemption as a matter of law, the taxpayers having failed to discharge fully their burden of clear proof and any doubt being resolved against the exemption and in favor of the taxing power.

## SUMMARY

The properties of the medical fraternities at the University of Texas Medical School at Galveston, Texas, are not shown to be entitled to ad valorem tax exemption as a matter of law under the facts and circumstances presented under either Section 1 or Section 22 of Article 7150, Vernon's Civil Statutes, as amended, and Article VIII, Section 2, Texas Constitution.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

By: NOLA WHITE
First Assistant

Prepared by W. E. Allen
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
Arthur Sandlin
John Reeves
Ralph Rash
Jack Goodman

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant