

# THE ATTORNEY GENERAL
# OF TEXAS

April 21, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable Grant Jones
Chairman
Senate Finance Committee
Texas State Senate
P. O. Box 12068
Austin, Texas    78711

Opinion No. JM-682

Re: Exemption for biomedical re-
search facilities under section
11.23(h) of the Property Tax Code

Dear Senator Jones:

Under a set of facts that you have submitted, you ask three
questions regarding whether the Southwest Foundation for Biomedical
Research [hereinafter the foundation] is entitled to exemption from
ad valorem taxation under the Property Tax Code and the Texas Consti-
tution. You also ask whether an applicant for exemption from ad
valorem taxation that satisfies the requirements contained in section
11.23(h) of the Tax Code will qualify automatically for exemption or
whether a separate determination must be made as to whether the
applicant further satisfies the court-imposed constitutional tests for
"purely public charities" under article VIII, section 2, of the Texas
Constitution. We conclude that, assuming proof of the facts that you
have submitted to us, the foundation would be exempt from ad valorem
taxation under both the relevant statute and the Texas Constitution.
We further conclude that applicants for exemption from ad valorem
taxation under section 11.23(h) of the Tax Code must comply with the
requirements imposed by the Texas Constitution, in addition to those
set forth in the relevant exemption statute.

You first ask the following three questions regarding whether the
foundation is exempt from taxation:

> 1. Does the foundation meet the criteria for
> exemption as a biomedical research corporation
> under section 11.23(h) of the Texas Property Tax
> Code and all applicable laws of the state?

> 2. Does the foundation qualify for an exemp-
> tion under any other section of the Property Tax
> Code?

> 3. Does the foundation meet the criteria for
> an 'institution of purely public charity' under

article VIII, section 2(a) of the Texas Constitution?

Your third question is whether the foundation satisfies the constitutional tests under article VIII, section 2, of the Texas Constitution. You first ask whether the foundation satisfies the requirements of section 11.23(h) and "all applicable laws of the state." Although "all applicable laws of the state" includes the Texas Constitution, we understand your first question to refer only to applicable statutes.

We note at the outset that the determination as to whether any property is entitled to exemption from ad valorem taxation necessarily requires the resolution of issues of fact. Benevolent and Protective Order of Elks, Lodge No. 151 v. City of Houston, 44 S.W.2d 488 (Tex. Civ. App. - Beaumont 1931, writ ref'd). Attorney General opinions issued pursuant to article 4399, V.T.C.S., do not resolve issues of fact. Accordingly, we predicate our conclusion on the facts that you have submitted to us. We make no findings of fact in this instance; we merely accept as true the facts that you have submitted.

Both statutory and constitutional provisions purporting to grant an exemption from ad valorem taxation should be given a narrow and strict construction, Davies v. Meyer, 528 S.W.2d 864 (Tex. Civ. App. - Fort Worth), aff'd, 541 S.W.2d 827 (Tex. 1975), because exemptions from taxation are not favored by the law and will not be construed favorably. Daughters of St. Paul, Inc. v. City of San Antonio, 387 S.W.2d 709 (Tex. Civ. App. - San Antonio 1965, writ ref'd n.r.e.). Moreover, the burden to establish the facts necessary to claim an exemption falls upon the institution seeking the exemption, Malone-Hogan Hospital Clinic Foundation, Inc. v. City of Big Spring, 288 S.W.2d 550 (Tex. Civ. App. - Eastland 1956, writ ref'd n.r.e.), with all doubts being resolved against granting the exemption. McClure v. City of Texarkana, 435 S.W.2d 599 (Tex. Civ. App. - Texarkana 1968, writ dism'd); Methodist River Oaks Apartments, Inc. v. City of Waco, 409 S.W.2d 485 (Tex. Civ. App. - Waco 1966, writ ref'd n.r.e.), cert. denied, 389 U.S. 848 (1967).

Article VIII, section 2(a), of the Texas Constitution provides in pertinent part that "the legislature may, by general laws, exempt from taxation . . . institutions of purely public charity." Section 11.18 of the Tax Code is the "general law" that the legislature has enacted to exempt such institutions. But in addition to section 11.18 of the Tax Code, the legislature has also enacted section 11.23 of the Tax Code, which sets forth so-called "miscellaneous exemptions," many of which were carried into the new Property Tax Code from the now-repealed exemptions listed in articles 7150 et seq., V.T.C.S. The section purporting to exempt biomedical research facilities was contained in section 29 of article 7150, V.T.C.S. Acts 1977, 65th Leg., ch. 865, §1, at 2192. Section 11.23 of the Tax Code lists ten

associations or organizations that it purports to exempt from taxation. Subsection (h) provides the following:

> Biomedical Research Corporations. A nonprofit corporation as defined in the Texas Non-Profit Corporation Act is entitled to an exemption from taxation of the property it owns and uses exclusively for biomedical research and education for the public benefit.

You have provided us with the following information:

> 1. The foundation makes no gain by private individuals, and there is no accrual of distributable profits. The foundation is not even in a position to use profits to reinvest in its research activities, because after depreciation, the foundation had a deficit of $1,298,092.00 for 1985.

> 2. The foundation, with work conducted in the areas of cancer research, genetic research, heart and lung diseases, hormone research, immunological and virological research, and other areas, accomplishes ends wholly benevolent, work which is intended to improve the well-being of others.

> 3. The foundation, through its work, is helping to provide biomedical research and education to the citizens of the State of Texas and is assuming, to a material extent, that which might otherwise become the obligation or duty of the community or the state.

> 4. The foundation, under its Trust Indenture, has its assets pledged to Texas A & M University and Yale University if the foundation were ever to dissolve. Further, the Trust Indenture shows that the purpose of the foundation is purely charitable and intended for the public benefit.

> 5. The foundation is a trust and a Texas nonprofit corporation.

> 6. The foundation has been granted tax exempt status by the Internal Revenue Service under section 501(c)(3).

> 7. The legislative history of section 11.23(h) of the Property Tax Code indicates that it was

enacted to exempt organizations such as the foundation from ad valorem taxation because it was considered a 'purely public charity.'

You first ask:

Does the foundation meet the criteria for exemption as a biomedical research corporation under section 11.23(h) of the Texas Property Tax Code and all applicable laws of the state?

By its very terms, section 11.23(h) of the Tax Code exempts a biomedical research corporation that: (1) is a nonprofit corporation as defined by the Texas Non-Profit Corporation Act; (2) owns the property on which exemption is sought; (3) uses exclusively the property for biomedical research and education; and (4) does so for the public benefit. On the basis of the information that you have submitted to us, it is evident that the foundation falls squarely within section 11.23(h) of the Tax Code. Compliance with no other statute, other than the application filing requirements of subchapter C of chapter 11 of the Tax Code governing administration of exemptions, is necessary in order to receive an exemption under section 11.23(h).

You next ask:

Does the foundation qualify for an exemption under any other section of the Property Tax Code?

Section 11.18 of the Tax Code is the general law that the legislature has enacted pursuant to article VIII, section 2, of the Texas Constitution to exempt from taxation institutions of public charity. Section 11.18 of the Tax Code sets forth the following in relevant part:

(a) An organization that qualifies as a charitable organization as provided by Subsection (c) of this section is entitled to an exemption from taxation of the buildings and tangible personal property that:

(1) are owned by the charitable organization; and

(2) except as permitted by Subsection (b) of this section, are used exclusively by qualified charitable organizations.

. . . .

(c)  To qualify as a charitable organization for the purposes of this section, an organization (whether operated by an individual, as a corporation, or as an association) must:

(1) be organized exclusively to perform religious, charitable, scientific, literary, or educational purposes and, except as permitted by Subsection (d) of this section [an exception not here relevant], engage exclusively in performing one or more of the following charitable functions:

(A)  providing medical care without regard to the beneficiaries' ability to pay;

(B)  providing support or relief to orphans, delinquent, dependent, or handicapped children in need of residential care, abused or battered spouses or children in need of temporary shelter, the impoverished, or victims of natural disaster without regard to the beneficiaries' ability to pay;

(C)  providing support to elderly persons or the handicapped without regard to the beneficiaries' ability to pay;

(D)  preserving a historical landmark or site;

(E)  promoting or operating a museum, zoo, library, theater of the dramatic arts, or symphony orchestra or choir;

(F)  promoting or providing humane treatment of animals;

(G)  acquiring, storing, transporting, selling, or distributing water for public use;

(H)  answering fire alarms and extinguishing fires with no compensation or only nominal compensation to the members of the organization;

(I)  promoting the athletic development of boys or girls under the age of 18 years;

(J)  preserving or conserving wildlife;

> (K) promoting educational development through loans or scholarships to students;
>
> (L) providing halfway house services pursuant to a certification as a halfway house by the Board of Pardons and Paroles;
>
> (M) providing permanent housing and related social, health care, and educational facilities for persons who are 62 years of age or older without regard to the residents' ability to pay;
>
> (N) promoting or operating an art gallery, museum, or collection, in a permanent location or on tour, that is open to the public; or
>
> (O) providing for the organized solicitation and collection for distributions through gifts, grants, and agreements to nonprofit charitable, education, religious, and youth organizations that provide direct human, health, and welfare services. . . . (Emphasis added).·

Assuming proof of the facts that you have submitted to us, we conclude that the foundation does not fall within subsection (c). It is clear that the foundation is organized exclusively to perform scientific and educational purposes, but the foundation does not "engage exclusively in performing one or more of the . . . charitable functions" listed in subsection (c)(1). The only function in which the foundation even arguably engages is the providing of medical care without regard to the beneficiaries' ability to pay. But the information that you have submitted to us indicates that the foundation engages in scientific and medical research, not medical treatment. As this office declared in Attorney General Opinion MW-288 (1980):

> In our opinion, the definition of 'charitable functions' in section 11.18(c)(1) clearly serves not to enlarge the meaning of 'purely public charity,' but to deny tax exemptions to property owned by institutions of purely public charity that are not organized to perform the charitable functions defined. Where section 11.18 has the effect of denying tax exemptions to organizations that might otherwise have been properly allowed them, it will be enforced. See Hilltop Village, Inc. v. Kerrville Independent School District, 426 S.W.2d 943 (Tex. 1968). Where it is used to bestow tax exemptions on property that does not

meet the 'purely public charity' test, it will be held unconstitutional as applied. <u>City of Amarillo v. Amarillo Lodge</u>, <u>supra</u>.

You claim in your letter that the foundation "is helping to provide biomedical research and <u>education</u> to the citizens of the state of Texas." Section 11.21 of the Tax Code exempts schools from taxation and provides the following in pertinent part:

(a) A person is entitled to an exemption from taxation of the buildings and tangible personal property that he owns and that are used for a school that is qualified as provided by Subsection (d) of this section if:

(1) the school is operated exclusively by the person owning the property;

(2) except as permitted by Subsection (b) of this section, the buildings and tangible personal property are used exclusively for educational functions; and

(3) the buildings and tangible personal property are reasonably necessary for the operation of the school.

. . . .

(d) <u>To qualify as a school for the purposes of this section, an organization (whether operated by an individual, as a corporation, or as an association) must</u>:

(1) <u>normally maintain a regular faculty and curriculum and normally have a regularly organized body of students in attendance at the place where its educational functions are carried on</u>;

(2) be operated in a way that does not result in accrual of distributable profits, realization of private gain resulting from payment of compensation in excess of a reasonable allowance for salary or other compensation for services rendered, or realization of any other form of private gain and, if the organization is a corporation, be organized as a nonprofit corporation as defined by the Texas Non-Profit Corporation Act; and

(3) by charter, bylaw, or other regulation adopted by the organization to govern its affairs:

(A) pledge its assets for use in performing the organization's educational functions; and

(B) direct that on discontinuance of the organization by dissolution or otherwise the assets are to be transferred to this state or to an educational, charitable, religious, or other similar organization that is qualified as a charitable organization under Section 501(c)(3), Internal Revenue Code of 1954, as amended [26 U.S.C. §501(c)(3)]. (Emphasis added).

Assuming proof of the facts that you have submitted to us, we conclude that the foundation fails to satisfy subsection (d)(1) and cannot avail itself of section 11.21 of the Tax Code. Our examination of the remaining sections of chapter 11 of the Tax Code does not disclose any other statutory ad valorem tax exemption that even arguably could apply.

You next ask:

Does the foundation meet the criteria for an 'institution of purely public charity' under article VIII, section 2(a) of the Texas Constitution?

As we noted earlier, article VIII, section 2(a), of the Texas Constitution provides that "the legislature may, by general laws, exempt from taxation . . . institutions of purely public charity." The Texas Supreme Court has set forth a three-part test for determining whether an association or organization is an "institution of purely public charity" for purposes of article VIII, section 2(a), of the Texas Constitution:

This Court suggested a definition of an institution of purely public charity, without reference to the statutory definition but largely in the same terms, in City of Houston v. Scottish Rite Benev. Ass'n, 111 Tex. 191, 230 S.W. 978, 981, where we said:

'In our opinion, the Legislature might reasonably conclude that an institution was one of 'purely public charity' where: First, it made

> no gain or profit; second, it accomplished ends wholly benevolent; and, third, it benefited persons, indefinite in numbers and in personalities, by preventing them, through absolute gratuity, from becoming burdens to society and to the state.'

Here, again, the primary purpose of the definition suggested was to meet the contention that an institution which dispensed aid only to its own members was not an institution of purely public charity; but here again, also, is the concept that an institution of purely public charity is one whose charity benefits persons 'by preventing them, through absolute gratuity, from becoming burdens to society and to the state.' We did not leave our meaning in that respect in doubt. We continued:

> 'Charity need not be universal to be public. It is public when it affects all the people of a community or state, by assuming, to a material extent, that which otherwise might become the obligation or duty of the community or the state.'

> The necessary converse of that statement is that an organization is not an institution of purely public charity within the meaning of the constitutional exemption unless it assumes, to a material extent, that which otherwise might become the obligation or duty of the community or the state. (Emphasis added).

River Oaks Garden Club v. City of Houston, 370 S.W.2d 851, 854 (Tex. 1963) [hereinafter River Oaks]. The language of the Scottish Rite test, first set forth in 1921, has been restated consistently by the courts through the years. See, e.g., City of Amarillo v. Amarillo Lodge No. 731, A.F. & A.M., 488 S.W.2d 69 (Tex. 1972); San Antonio Conservation Society, Inc. v. City of San Antonio, 455 S.W.2d 743 (Tex. 1970); Harris v. City of Fort Worth, 180 S.W.2d 131 (Tex. 1944); City of Dallas v. Smith, 107 S.W.2d 872 (Tex. 1937); Santa Rosa Infirmary v. City of San Antonio, 259 S.W. 926, judgement adopted (Tex. Comm'n App 1924). But the courts have since broadened considerably the scope of the amendment.

In River Oaks, the court denied tax exempt status to a garden club in Houston. The club was formed as a nonprofit corporation, maintained a landmark of historical value, and had as its main activity "the education and enlightenment" of its members and the

public in the art of growing and arranging flowers. The court quoted a Massachusetts Supreme Court case in offering a rationale for its strict construction:

> In Massachusetts General Hospital v. Inhabitants of Belmont, 233 Mass. 190, 124 N.E. 21, 25, the Supreme Judicial Court of Massachusetts stated the rationale for exemption from taxes of property of charitable institutions as well as a sound reason for strict construction in these words:
>
>> 'One ground upon which exemptions from taxation of charitable institutions like the complainant can be justified in a constitutional sense is that they minister to human and social needs which the state itself might and does to a greater or less extent undertake to satisfy. The ultimate obligation of the state thus is discharged by the private charity. To that extent the state is relieved of its burden. [In re] Opinion of [the] Justices, 195 Mass. 607, 609, 84 N.E. 499. An exemption from taxation is in the nature of an appropriation of public funds, because, to the extent of the exemption, it becomes necessary to increase the rate of taxation upon other properties in order to raise money for the support of government.'

370 S.W.2d at 855.

The court then concluded that the corporation failed the third constitutional test:

> We hold · on the facts here stated that petitioner is not an institution of purely public charity. Admittedly, its main activity is to educate and enlighten its members, and such other persons as care to attend its meetings or read its book, in the art of growing and arranging flowers. That activity may be one which the state or local government could finance from taxes, a question we need not decide, but it is certainly not an activity which either the state or local government is under a duty or an obligation to finance in providing educational opportunities and benefits to its society.
>
> If petitioner may claim tax exemption as a constitutional 'institution of purely public

charity,' there can be no end of exemptions accorded clubhouses and meeting places owned by small groups of persons of common aesthetic interests who associate themselves to promote and enjoy their particular interests. All they would need do would be to declare theirs to be a society of fine arts, devoted exclusively to education and learning in the field of their particular interests, and admit the public, without charge, to their clubhouse and meetings. It is but a half stride from the art of gardening to the art of interior decorating, and less than a half stride to the art of dramatics. Many others are but a stride away. (Emphasis added).

370 S.W.2d at 855-56.

In a case decided only five years after River Oaks, the court continued its strict construction of the purely public charity constitutional tests. In Hilltop Village, Inc. v. Kerrville Independent School District, 426 S.W.2d 943 (Tex. 1968), the court denied tax exempt status as a purely public charity to a home for the aged. The court acknowledged that the factual situation presented was one of first impression in the state and reviewed cases from other jurisdictions that had dealt with the same issue. While pointing out that the out-of-state cases were not controlling in Texas because the requirements of Texas constitutional and statutory law differ from those of other states, the court noted rationales common to those cases cited.

The decisions recognizing tax exemption are rested principally upon the conclusion that people in later years have special care and residential requirements, the alleviation of which is of social value; and that exemption should be allowed where such needs are being met by institutions not organized or operated for private profit. The decisions denying exemption have emphasized that the occupants of the homes were the principal beneficiaries rather than society in general, and that society was not relieved of responsibility for persons in need. All of the courts appear to pay homage to the rule that tax exemptions are subject to strict construction since they are the antithesis of equality and uniformity.

426 S.W.2d at 947-48. The court then affirmed the lower court's judgment that the home was not a purely public charity, but did so on different grounds. The court disagreed with the lower court holding that providing homes for the elderly cannot qualify as a purely public charity, but concluded that, in an instance in which such aid was not

dispensed "without regard to the poverty or riches of the recipient," such institution would not qualify.

> But it is apparent that Hilltop Village is not accepting residents without regard to their financial circumstances nor is it bound to assume charitable obligations or to engage in dispensing relief to those in need. The requisite elements of dedication and use in fact of its properties are not present. There is no assurance that society is being or will be relieved of the care and expense of those in need. This is not to say that all residents must be indigent or that the acceptance of payment from some will defeat tax exemption. It is to say that the institution must be one whose properties and assets are pledged in perpetuity to the relief of persons in financial need and to their assistance in obtaining the care they must have to prevent their becoming a burden on society. Laudable as it is in origin and operation, Hilltop Village does not meet the requirements of the Constitution and statutes of Texas for exemption from taxation as an institution of purely public charity. (Emphasis added).

426 S.W.2d at 949. See also City of Amarillo v. Amarillo Lodge No. 731, A.F. & A.M., 488 S.W.2d 69, 71 (Tex. 1972), wherein the court declared:

> The characteristics of an institution of purely public charity have been considered in several other cases. While the benevolent ends sought to be accomplished may take some form other than almsgiving, it is essential that the organization assume, to a material extent, that which otherwise might become the obligation or duty of the community or the state. . . . (Emphasis added).

In San Antonio Conservation Society, Inc. v. City of San Antonio, 455 S.W.2d 743 (Tex. 1970) [hereinafter Conservation Society] the Texas Supreme Court held that a nonprofit organization chartered for the purpose of preserving historical buildings and sites was a purely public charity for purposes of article VIII, section 2, of the Texas Constitution. While restating the tests that have traditionally been imposed, the court expanded their application in two important respects. First, unlike the factual situations presented in Scottish Rite, Hilltop Village, or River Oaks, for example, in which the beneficiaries of the charity could be individually identified, the court in Conservation Society was confronted with a situation in which the beneficiary was the public at large:

> We must measure the benefits to the whole
> public against the rule announced in Scottish Rite
> and restated in River Oaks Garden Club. That rule
> is: 'It is public when it affects all the people
> of a community or state by assuming, to a material
> extent, that which otherwise might become the
> obligation or duty of the community or the state.'
> The City concedes that the whole public receives
> the benefits of the Navaro House. (Emphasis
> added).

455 S.W.2d at 746. Second, the court in River Oaks described the
activity of the River Oaks Garden Club and declared:

> That activity may be one which the state or local
> government could finance from taxes, a question
> we need not decide, but it is certainly not an
> activity which either the state or local govern-
> ment is under a duty or an obligation to finance
> in providing educational opportunities and
> benefits to its society. (Emphasis added).

370 S.W.2d at 855. In San Antonio Conservation Society, the court
examined various constitutional and statutory provisions regarding the
preservation of Texas' historical heritage and concluded that, taken
together, they offer sufficient examples of a governmental interest in
preserving historical buildings and sites to warrant the conservation
society's claim that it assumes to a material extent that which would
otherwise become the obligation or duty of the community or state.
Unlike the factual situations in Santa Rosa Infirmary, Scottish Rite,
or even Hilltop Village, the court was dealing, not with indigents
needing care, but with a situation in which the state had assumed
voluntarily an obligation not otherwise imposed. Compare Tex. Const.
art. XI, §2, and Const. art. XVI, §8, and V.T.C.S. art. 2351, with
Tex. Const. art. XVI, §§38 [Repealed by Acts 1969, 61st Leg., at
3230], 39.

And finally, in City of McAllen v. Evangelical Lutheran Good
Samaritan Society, 530 S.W.2d 806 (Tex. 1975), the court expanded the
doctrine of purely public charity to reach a situation in which
"purely" was no longer a requirement. The charter of the organization
that sought the tax exemption provided that the organization engage in
charitable and religious purposes. The court concluded that such a
defect was not fatal to the organization's claim that it was exempt as
a purely public charity.

Some 22 years after River Oaks, a Texas appeals court construed
the doctrine of purely public charity to reach a symphony orchestra.
In Dallas Symphony Association, Inc. v. Dallas County Appraisal
District, 695 S.W.2d 595 (Tex. App. - Dallas 1985, writ ref'd n.r.e.),

that court held as a matter of law on summary judgment that the Dallas Symphony Association, Inc., a nonprofit corporation whose primary purpose was the promotion of musical and educational activities, was tax exempt as a purely public charity. The appraisal district contended that the association failed to satisfy the three-part test of Scottish Rite. The appeals court determined that the appraisal district had produced no controverting evidence and concluded that the association did assume to a material extent that which would otherwise become a burden on the community based on the summary judgment proofs:

> We take judicial notice of the fact that the City of Dallas ranks seventh in size in the nation based upon population. The needs of its citizens vary from the basic essentials, such as streets, garbage collection, and police and fire protection, to libraries, art museums, and cultural activities. The well-being and economic growth of a community benefits all its citizens. A major contributing factor to the growth of the City of Dallas is its cultural achievements, which in turn stimulates trade and commerce, and reduces unemployment.

> Our review of the affidavits in support of the Symphony's motion for summary judgment further supports our conclusion that the Symphony is a purely public charity as a matter of law.

695 S.W.2d at 599. The appeals court has taken the "half stride" that the River Oaks court warned about. But see Military Highway Water Supply Corp. v. Boone, 688 S.W.2d 648 (Tex. App. - Corpus Christi 1985, no writ); Willacy County Appraisal District v. North Alamo Water Supply Corp., 676 S.W.2d 632 (Tex. App. - Corpus Christi 1984, writ ref'd n.r.e.).

Assuming proof of the facts that you have submitted to us, we conclude that the first two constitutional tests are satisfied. The most difficult of the three tests to meet in any determination regarding whether an organization or association is an "institution of purely public charity" is the third test, namely whether the applicant assumes to a material extent that which otherwise might become an obligation or duty of a community or state. You describe the activities in which the foundation engages in the following paragraph:

> The foundation, with work conducted in the areas of cancer research, genetic research, heart and lung diseases, hormone research, immunological and virological research, and other areas, accomplishes

ends wholly benevolent, work which is intended to improve the well-being of others.

Based upon our examination of Texas law and relying primarily upon the Conservation Society case, we cannot conclude that a court presented with the question would not grant the tax exemption. We thus conclude that a nonprofit foundation that engages exclusively in biomedical research and education could meet the requisite constitutional tests. See, e.g., Educ. Code chs. 73, 74 (establishing various medical schools and teaching and research hospitals); V.T.C.S. arts. 4477-40 (the Cancer Control Act); 4477-41 (the Texas Cancer Council); 4477-11 (the Tuberculosis Code); 4477-12 (prevention, eradication, and control of tuberculosis); 4477-20 (Kidney Health Care Act); 4477-30 (hemophilia assistance program); 4477-50 (epilepsy program); 4477-60 (Texas Diabetes Council); 4477-70 (abnormal spinal curvature in children); 4476-15, subchapter 7 (medical and research program established by Texas Board of Health regarding certain controlled substances); 4419b-1 (Communicable Disease Prevention and Control Act).

And finally, you ask whether an applicant who satisfies the criteria set forth in section 11.23(h) of the Tax Code, automatically qualifies for exemption from ad valorem taxation or whether the applicant must additionally satisfy the three-part constitutional tests for "institutions of purely public charities." Article VIII, section 2(a), of the Texas Constitution provides in relevant part that "all laws exempting property from taxation other than the property mentioned in this Section shall be null and void." Article VIII, section 2(a), has been construed to prohibit the legislature from allowing by statute charitable tax exemptions for property not owned by institutions of purely public charity, as defined by the Texas Constitution. See Dickison v. Woodmen of the World Life Insurance Society, 280 S.W.2d 315 (Tex. Civ. App. - San Antonio 1955, writ ref'd). See also River Oaks Garden Club v. City of Houston, supra. In order for a charitable exemption to apply, both the constitutional and statutory requirements must be met. City of Amarillo v. Amarillo Lodge No. 731, A.F. & A.M., 488 S.W.2d 69 (Tex. 1972); Santa Rosa Infirmary v. City of San Antonio, 259 S.W. 926, judgement adopted (Tex. Comm'n App. 1924); Attorney General Opinion MW-288 (1980).

We conclude that, if it is determined that the facts regarding the Southwest Foundation for Biomedical Research are as you describe, the Southwest Foundation for Biomedical Research would be entitled to be exempt from ad valorem taxation as an "institution of purely public charity" pursuant to section 11.23(h) of the Tax Code and article VIII, section 2(a), of the Texas Constitution. An applicant for exemption from ad valorem taxation as a biomedical research facility must satisfy both the requirements contained in section 11.23(h) of the Tax Code and the court-imposed three-part tests for "institutions

of public charity" under article VIII, section 2(a), of the Texas Constitution.

## S U M M A R Y

If it is determined that the facts regarding the Southwest Foundation for Biomedical Research are as you describe, we cannot say that the Southwest Foundation for Biomedical Research would not be entitled to be exempt from ad valorem taxation as an "institution for purely public charity" pursuant to section 11.23(h) of the Tax Code, and article VIII, section 2(a), of the Texas Constitution. An applicant for exemption from ad valorem taxation as a biomedical research facility must satisfy both the requirements contained in section 11.23(h) of the Tax Code and the court-imposed three-part tests for "institutions of purely public charity" under article VIII, section 2(a), of the Texas Constitution.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General